## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DSM DESOTECH, Inc., a Delaware corporation, and | ) ) ) | |
| DSM I.P. ASSETS B.V., a Netherlands corporation, | ) ) ) | Civil Action No. _____ |
| Plaintiffs, | ) ) | **COMPLAINT AND DEMAND FOR** |
| v. | ) ) | **JURY TRIAL** |
| CORNING INCORPORATED, a New York Corporation, | ) ) ) | ▉▉▉▉▉▉▉▉▉▉ |
| Defendant. | ) ) ) ) ) | |

Plaintiffs DSM Desotech, Inc. ("DSM Desotech") and DSM I.P. Assets B.V. "(DSM IP")

(collectively, "DSM" or "Plaintiffs"), allege as follows against Defendant Corning Incorporated

("Corning" or "Defendant"):

### NATURE OF THE ACTION

1.      This is an action by DSM Desotech for breach of contract and DSM for patent

infringement against Defendant arising out of a dispute regarding a long-term supply contract for

DSM Desotech's proprietary optical fiber coatings.

### PARTIES

2.      Plaintiff DSM Desotech, Inc. is a Delaware corporation with its principal place of

business at 1122 Saint Charles Street, Elgin, Illinois 60120.

3.      Plaintiff DSM I.P. Assets B.V., is a Netherlands corporation with a registered

place of business at Het Overloon 1, 6411 Te Heerlen, Netherlands.

4.      Defendant Corning Incorporated is a New York corporation with its principal place of business at One Riverfront Plaza, Corning, New York 14831.

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over Defendant Corning ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████

6.      This Court has jurisdiction over the breach of contract claims asserted herein under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds seventy-five thousand ($75,000) dollars.  This Court has jurisdiction over the patent infringement claims under 28 U.S.C. §§ 1331, 1338, and 1367.

7.      The substantial and related patent infringement claims under the patent laws of the United States, Title 35 of the United States Code, § 1 *et. seq.* relate to and arise out of the Supply Agreement and are joined with the breach of contract claims.

8.      In addition, on information and belief, Corning has conducted and does conduct business within the State of Illinois.  Corning directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products in the United States, the State of Illinois, and the Northern District of Illinois.  Corning has purposefully and voluntarily placed its optical fiber products into the stream of commerce with the expectation that they will be purchased by consumers in the Northern District of Illinois.  Upon information and belief, these infringing products have been and continue to be purchased by consumers in the Northern District of Illinois.

9.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred in this district.

10.     Venue is also proper in this district ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

## BACKGROUND

11.     For over 40 years, DSM Desotech (or its predecessors) has dedicated significant resources to the research and development of improved optical fiber coatings.  It specializes in UV-curable optical fiber coatings, a critical component of high-speed optical fiber networks. With more than three decades of experience in fiber coatings development, it is the world's leading developer of such coatings.

### Longstanding Relationship Between DSM and Corning

12.     DSM Desotech has been an exclusive supplier to Corning of proprietary and patented coating materials for application to optical fibers since at least the early 1990s.

13.     DSM Desotech and Corning are currently parties to a Supply Agreement ████

████████████████████████████████████████████████████████████████

████████████████████████ (the agreement collectively with amendments, "Supply Agreement").

14.     ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

15. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████

16. █████████████████████████████████████████
████████████████████████████████████████████████

17.     DSM Desotech has dedicated significant amounts of resources, including for research and development, that led to the development of coatings specifically for Corning, ████████████████████████████████████

18. █████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

19.     Without coatings, glass optical fibers are unusable because they are fragile and cannot be deployed into the field.

20.     DSM Desotech helped Corning establish the fiber optic market through the development of fiber optic coatings, including but not limited to providing technical assistance, helping with problem solving and co-marketing efforts.  The results of this collaboration resulted in building and expanding the fiber optic business for Corning and expanding its sales.

21. █████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

22.     Notably, in the early 2000s, DSM Desotech built a plant in Stanley, North Carolina ████████████████████████████████████████ DSM Desotech has also worked with its affiliates to provide coating plant support to Corning in Europe, China and India.

23.     ████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

**Development of DSM's Extensive Patent Portfolio**

24.     DSM and its affiliates have obtained more than 120 U.S. patents in UV-curable technology, and have obtained numerous patents in UV-curable technology in Europe, Asia-Pacific, Australia and Canada.  As detailed further in this Complaint, the patents held by DSM include the following:

    a.     United States Patent No. 7,171,103 (the "'103 Patent") entitled "Coated optical fibers."  Plaintiff DSM IP is the owner by assignment and Plaintiff DSM Desotech is the exclusive licensee of the '103 Patent.  DSM Desotech exclusively licenses/holds all substantial rights thereof, including the right to bring this lawsuit.  A copy of the '103 Patent is attached hereto as Exhibit B.

b. United States Patent No. 6,961,508 (the "'508 Patent") entitled "Coated optical fibers." Plaintiff DSM IP is the owner by assignment and Plaintiff DSM Desotech is the exclusive licensee of the '508 Patent. DSM Desotech exclusively licenses/holds all substantial rights thereof, including the right to bring this lawsuit. A copy of the '508 Patent is attached hereto as Exhibit C.

c. United States Patent No. 6,339,666 (the "'666 Patent") entitled "Radiation-curable optical glass fiber coating compositions, coated optical glass fibers, and optical glass fiber assemblies." Plaintiff DSM IP is the owner by assignment and Plaintiff DSM Desotech is the exclusive licensee of the '666 Patent. DSM Desotech exclusively licenses/holds all substantial rights thereof, including the right to bring this lawsuit. A copy of the '666 Patent is attached hereto as Exhibit D.

d. United States Patent No. 6,438,306 (the "'306 Patent") entitled "Radiation curable resin composition." Plaintiff DSM IP is the owner by assignment and Plaintiff DSM Desotech is the exclusive licensee of the '306 Patent. DSM Desotech exclusively licenses/holds all substantial rights thereof, including the right to bring this lawsuit. A copy of the '306 Patent is attached hereto as Exhibit E.

e. United States Patent No. 6,298,189 (the "'189 Patent") entitled "Radiation-curable optical glass fiber coating compositions, coated optical glass fibers, and optical glass fiber assemblies." Plaintiff DSM IP is the owner by assignment and Plaintiff DSM Desotech is the exclusive licensee of the '189 Patent. DSM Desotech exclusively licenses/holds all substantial rights thereof, including the

right to bring this lawsuit.  A copy of the '189 Patent is attached hereto as Exhibit F.

    f.    United States Patent No. 7,276,543 (the "'543 Patent") entitled "Radiation curable resin composition."  Plaintiff DSM IP is the owner by assignment and Plaintiff DSM Desotech is the exclusive licensee of the '543 Patent. DSM Desotech exclusively licenses/holds all substantial rights thereof, including the right to bring this lawsuit.  A copy of the '543 Patent is attached hereto as Exhibit G.

25.    The patents described in paragraph 24 are herein collectively referred to as the "DSM Patents."

**History of the Negotiations of the Supply Agreement**

26.    In 2010, the parties began negotiating renewal of a supply agreement. ███

███████████████████████████████████████████████████

████████████████████

27.    In about 2010-11, during negotiations for the renewal of the Supply Agreement, talks broke down concerning the price to be charged for the DSM Desotech coatings.  Wanting to maintain a continuous supply of coating materials and to continue the longstanding relationship, Corning and DSM Desotech entered into a new supply contract in early 2011, the Supply Agreement.  (Ex. A.)

28.    By no later than mid-2010, however, on information and belief, Corning started evaluating various alternative coating material supply options.  On information and belief, Corning developed its own alternative coatings during the term of the Supply Agreement. Corning also sought, on information and belief, an alternative supply of coatings in lieu of renewing the Supply Agreement during the term of the Supply Agreement.  To that end, on

information and belief, Corning's actions included, but were not limited to, an examination of DSM's patents and alleged prior art as Corning went on the offensive in trying to attack DSM's patents, as well as pursuing an alternative coating material supplier. On information and belief, especially given the extensive time and resources Corning devoted to its efforts to attack DSM's patents, the alternative coatings identified by Corning infringe certain DSM patents.

29. For example, Robert L. Carlson, Corning's Division Patent Counsel for Optical Fiber and Specialty Materials – Advanced Optics Division, and others at his direction at Corning began reviewing various DSM patents on Corning's behalf in 2010. On information and belief, as part of this review, Corning conducted legal assessments with respect to certain claims of the U.S. patents in DSM's portfolio, and evaluated prior art patents potentially relevant to DSM's patents. As a result, Corning identified a number of prior art patents it believed to be potentially relevant to one or more claims in the DSM Patents. A team of Corning scientists prepared and tested specific formulations disclosed in these prior art patents as part of a major effort to attack the validity of DSM's patents.

30. Despite various requests, Corning has not informed or provided DSM Desotech with any of the formulation details or samples of Corning's alternative or "proprietary" coatings.

**The Set-Up By Corning**

31.



32. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

**Multiple Coatings by Corning**

33.     In addition, in its improperly filed, co-pending Complaint in Delaware, Corning asserts that it has more than one proprietary coating that it developed during the term of the Supply Agreement, including but not limited to the Kuna coating.  (*See* Exhibit I).  ████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████

**Corning's Failed Attempt to Invalidate the DSM Patents in *Inter Partes* Reviews**

34.    Because, on information and belief, Corning's alternative coatings infringe the DSM Patents, in November 2012 Corning filed ten (10) petitions at the Patent Trial and Appeal Board (PTAB) in the United States Patent & Trademark Office ("USPTO") seeking *Inter Partes* Review ("IPR") of 8 DSM patents, including the following six patents:

   a.   The '103 Patent (IPR2013-00043);

   b.   The '508 Patent (IPR2013-00044);

   c.   The '666 Patent (IPR2013-00045);

   d.   The '306 Patent (IPR2013-00047);

   e.   The '189 Patent (IPR2013-00048 and IPR2013-00049); and

   f.   The '543 Patent (IPR2013-00052; IPR2013-00053).

35.    In the IPR proceedings, Corning submitted more than 70 tests of the prior art supported by more than 1900 pages of declaration testimony.  The PTAB then instituted trial on 215 of 225 challenged patent claims.  Extensive litigation ensued before the PTAB.  In USPTO fees alone (to say nothing about its likely attorneys' fees and internal research and development costs), Corning spent more than $300,000 in filing fees to *merely file* the 10 IPRs.  As DSM Desotech learned during the IPRs, Corning began trying to invalidate DSM's patents at least as early as mid-2010, and involved many Corning scientists and technicians.  During the IPRs, Corning relied on two employee witnesses and four outside experts.  In other words, Corning invested significant personnel and monetary resources over an extended period of time in trying to attack DSM's patents and continues to do so today.

36.    However, in its Final Written Decisions in May 2014, the PTAB denied Corning's request for cancellation on approximately 70% of those 215 claims and outright denied five of

the Corning's petitions in their entirety (IPR2013-00043, 00044, 00045, 00047 & 00049). Corning has filed notices of appeal in five these cases (IPR2013-00043, 00044, 00045, 00048 and 00049).

37.     Under 35 U.S.C. § 315(e), Corning is estopped from asserting in litigation that any of the 162 challenged claims which it was unable to prove unpatentable in the *inter partes* review proceedings is invalid on any ground that Corning raised or reasonably could have raised during *inter partes* review.

██████████████████████████

38.     ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

39.     ████████████████████████████████████

█████████████████████

**Corning's Delaware Lawsuit**

40.     Having lost the vast majority of its challenges at the PTAB, on August 21, 2014, Corning filed a lawsuit against DSM in the United States District Court for the District of Delaware seeking a declaratory judgment of non-infringement of any valid and enforceable claim of the same DSM patents at issue in the IPRs.  *See* Complaint at Exhibit J.

41.     Corning states in the Delaware Complaint that it has developed and manufactures, or has third parties manufacture for its exclusive use, acrylate coatings for optical fibers, including its "Kuna" coating.

42.     On information and belief, Corning is already using and further intends to use its own proprietary coatings, such as its "Kuna" coating, in the United States and throughout the world to replace the optical coatings supplied by DSM Desotech.

43.     Upon information and belief, Corning is already infringing and is further preparing to infringe, and/or inducing others to infringe by making, using, offering to sell, and/or selling in the United States, and/or importing into or preparing to import into the United States, products or processes that practice one or more inventions claimed in the DSM Patents and outside of the scope of the rights and obligations under the Supply Agreement.

44.     Upon information and belief, Corning will profit or has profited through the breach of the Supply Agreement and infringement of the DSM Patents.  As a result of Corning's infringement of the DSM Patents, DSM will or has suffered and will continue to suffer damage. DSM is entitled to recover from Defendant the damages suffered by DSM as a result of Defendant's unlawful acts.

45.     Upon information and belief, Corning's infringement of one or more of the DSM Patents is willful and deliberate, entitling DSM to enhanced damages and reasonable attorney fees and costs.

46.     Upon information and belief, Corning intends to continue its unlawful infringing activity, and DSM continues to and will continue to suffer irreparable harm—for which there is no adequate remedy at law—from such unlawful infringing activity unless Corning is enjoined by this court.

47.     Unless enjoined by this Court, Corning's current and planned activities would cause irreparable harm to DSM Desotech. ████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████

## FIRST CLAIM FOR RELIEF
### Breach of Contract

48.     DSM Desotech re-alleges and incorporates by reference the allegations of Paragraphs 1 through 47 above as though fully set forth herein.

49.     The Supply Agreement between DSM Desotech and Corning is a valid, enforceable, written contract, with definite and certain terms.

50.     DSM Desotech has performed and is still performing all of its required obligations under the Supply Agreement.

51.     ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████

52.     ████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████

53.     On information and belief, Corning's admissions in the Delaware Complaint regarding its proprietary coatings, including the "Kuna" coating, ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████

54.    On information and belief, Corning's admissions in the Delaware Complaint regarding the existence of its proprietary coatings, including the "Kuna" coating, ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

55.    Corning's Delaware Complaint itself is a direct violation of Article 14 of the Supply Agreement with ████████████████████████████████

████████████████████████████████████████████

████

56.    As a result of Corning's violation of the Supply Agreement, DSM Desotech has suffered damages in an amount to be determined at trial.

57.    In the alternative, to the extent that Corning contends ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████  ████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████

## SECOND CLAIM FOR RELIEF
## Infringement of U.S. Patent No. 7,171,103

58.  DSM re-alleges and incorporates by reference the allegations of Paragraphs 1 through 57 above as though fully set forth herein.

59.  On information and belief, Corning will, has been and/or is directly infringing and/or inducing infringement of and/or contributorily infringing the '103 Patent by, among other things, making, using, offering to sell or selling in the United States, or importing into the United States, products and/or services that are covered by one or more claims of the '103 Patent, including Corning proprietary coatings, by way of example and without limitation, the "Kuna" coating for optical fibers.

60.  DSM Desotech has repeatedly requested that Corning provide samples and formulation information for its alternative acrylate coatings for optical fibers, including its "Kuna" coating, for testing.  Corning has refused.

61.  Corning challenged the patentability seeking cancellation of all of the claims of the '103 Patent in IPR2013-00043.  After an administrative trial on the merits, the Patent Trial and Appeal Board denied Corning's cancellation request with respect to all of the claims because

Corning had not met its burden of showing by a preponderance of the evidence that any of the claims of the '103 patent were unpatentable over the prior art identified by Corning.

62. Given the great lengths Corning has taken to attempt to invalidate DSM's patents, namely ten (10) hard-fought, expensive, and protracted *inter partes* review proceedings followed by appeals of adverse rulings in those proceedings and a declaratory judgment action seeking a declaration of no liability for infringement of the '103 Patent, and being deprived by Corning of information to enable DSM to independently evaluate Corning's new coatings, DSM is led to believe that such coatings infringe one or more claims of the '103 Patent.

**THIRD CLAIM FOR RELIEF**
**<ins>Infringement of U.S. Patent No. 6,961,508</ins>**

63. DSM re-alleges and incorporates by reference the allegations of Paragraphs 1 through 62 above as though fully set forth herein.

64. Corning will, has been and/or is directly infringing and/or inducing infringement of and/or contributorily infringing the '508 Patent by, among other things, making, using, offering to sell or selling in the United States, or importing into the United States, products and/or services that are covered by one or more claims of the '508 Patent, including Corning proprietary coatings, by way of example and without limitation, the "Kuna" coating for optical fibers.

65. DSM Desotech has repeatedly requested that Corning provide samples and formulation information for its alternative acrylate coatings for optical fibers, including its "Kuna" coating, for testing. Corning has refused.

66. Corning challenged the patentability seeking cancellation of all of the claims of the '508 Patent in IPR2013-00044. After an administrative trial on the merits, the Patent Trial and Appeal Board denied Corning's cancellation request with respect to all of the claims because

Corning had not met its burden of showing by a preponderance of the evidence that any of the claims of the '508 patent were unpatentable over the prior art identified by Corning.

67.     Given the great lengths Corning has taken to attempt to invalidate DSM's patents, namely hard-fought and protracted inter partes review proceedings followed by appeals of adverse rulings in those proceedings and a declaratory judgment action seeking a declaration of no liability for infringement of the '508 Patent, and being deprived by Corning of information to enable DSM to independently evaluate Corning's new coatings, DSM is led to believe that such coatings infringe one or more claims of the '508 Patent.

**FOURTH CLAIM FOR RELIEF**
**Infringement of U.S. Patent No. 6,399,666**

68.     DSM re-alleges and incorporates by reference the allegations of Paragraphs 1 through 67 above as though fully set forth herein.

69.     Corning will, has been and/or is directly infringing and/or inducing infringement of and/or contributorily infringing the '666 Patent by, among other things, making, using, offering to sell or selling in the United States, or importing into the United States, products and/or services that are covered by one or more of claims 4-7, 9, 13-15 and 19-20 of the '666 Patent, including Corning proprietary coatings, by way of example and without limitation, the "Kuna" coating for optical fibers.

70.     DSM Desotech has repeatedly requested that Corning provide samples and formulation information for its alternative acrylate coatings for optical fibers, including its "Kuna" coating, for testing.  Corning has refused.

71.     Given the great lengths Corning has taken to attempt to invalidate DSM's patents, namely hard-fought and protracted *inter partes* review proceedings followed by appeals of adverse rulings in those proceedings and a declaratory judgment action seeking a declaration of

no liability for infringement of the '666 Patent, and being deprived by Corning of information to enable DSM to independently evaluate Corning's new coatings, DSM is led to believe that such coatings infringe one or more of claims 4-7, 9, 13-15 and 19-20 of the '666 Patent.

## FIFTH CLAIM FOR RELIEF
### Infringement of U.S. Patent No. 6,438,306

72.     DSM re-alleges and incorporates by reference the allegations of Paragraphs 1 through 71 above as though fully set forth herein.

73.     Corning will, has been and/or is directly infringing and/or inducing infringement of and/or contributorily infringing the '306 Patent by, among other things, making, using, offering to sell or selling in the United States, or importing into the United States, products and/or services that are covered by one or more of claims 10 and 11 of the '306 Patent, including Corning proprietary coatings, by way of example and without limitation, the "Kuna" coating for optical fibers.

74.     DSM Desotech has repeatedly requested that Corning provide samples and formulation information for its alternative acrylate coatings for optical fibers, including its "Kuna" coating, for testing.  Corning has refused.

75.     Corning challenged the patentability seeking cancellation of all of the claims of the '306 Patent in IPR2013-00047.  After an administrative trial on the merits, the Patent Trial and Appeal Board denied Corning's cancellation request with respect to all of the claims because Corning had not met its burden of showing by a preponderance of the evidence that any of the claims of the '306 patent were unpatentable over the prior art identified by Corning.

76.     Given the great lengths Corning has taken to attempt to invalidate DSM's patents, namely hard-fought and protracted *inter partes* review proceedings followed by appeals of adverse rulings in those proceedings and a declaratory judgment action seeking a declaration of

no liability for infringement of the '306 Patent, and being deprived by Corning of information to enable DSM to independently evaluate Corning's new coatings, DSM is led to believe that such coatings infringe one or more of claims 10 and 11 of the '306 Patent.

## SIXTH CLAIM FOR RELIEF
### Infringement of U.S. Patent No. 6,298,189

77.     DSM re-alleges and incorporates by reference the allegations of Paragraphs 1 through 76 above as though fully set forth herein.

78.     Corning will, has been and/or is directly infringing and/or inducing infringement of and/or contributorily infringing the '189 Patent by, among other things, making, using, offering to sell or selling in the United States, or importing into the United States, products and/or services that are covered by one or more claims of the '189 Patent, including Corning proprietary coatings, by way of example and without limitation, the "Kuna" coating for optical fibers.

79.     DSM Desotech has repeatedly requested that Corning provide samples and formulation information for its alternative acrylate coatings for optical fibers, including its "Kuna" coating, for testing. Corning has refused.

80.     Given the great lengths Corning has taken to attempt to invalidate DSM's patents, namely hard-fought and protracted *inter partes* review proceedings followed by appeals of adverse rulings in those proceedings and a declaratory judgment action seeking a declaration of no liability for infringement of the '189 Patent, and being deprived by Corning of information to enable DSM to independently evaluate Corning's new coatings, DSM is led to believe that such coatings infringe one or more claims of the '189 Patent.

## SEVENTH CLAIM FOR RELIEF
### Infringement of U.S. Patent No. 7,276,543

81.      DSM re-alleges and incorporates by reference the allegations of Paragraphs 1 through 80 above as though fully set forth herein.

82.      Corning will, has been and/or is directly infringing and/or inducing infringement of and/or contributorily infringing the '543 Patent by, among other things, making, using, offering to sell or selling in the United States, or importing into the United States, products and/or services that are covered by one or more of claims 1-10, 24-25, 40-43, and 45-49 of the '543 Patent, including Corning proprietary coatings, by way of example and without limitation, the "Kuna" coating for optical fibers.

83.      DSM Desotech has repeatedly requested that Corning provide samples and formulation information for its alternative acrylate coatings for optical fibers, including its "Kuna" coating, for testing.  Corning has refused.

84.      Given the great lengths Corning has taken to attempt to invalidate DSM's patents, namely hard-fought and protracted *inter partes* review proceedings followed by appeals of adverse rulings in those proceedings and a declaratory judgment action seeking a declaration of no liability for infringement of the '543 Patent, and being deprived by Corning of information to enable DSM to independently evaluate Corning's new coatings, DSM is led to believe that such coatings infringe one or more claims of claims 1-10, 24-25, 40-43, and 45-49 of the '543 Patent.

## PRAYER FOR RELIEF

Wherefore, DSM prays for relief as follows:

1.  A judgment that Corning breached the parties' valid, enforceable, written Supply Agreement;

2.  A preliminary injunction enjoining business activities—including the use, development, sourcing, manufacturing and marketing—for any coatings developed by Corning that Corning intends to use in place of the coatings supplied by DSM Desotech under the Supply Agreement, including Corning's "Kuna" coating;

3.  A preliminary injunction enjoining Corning from patent infringement;

4.  For a judgment awarding DSM compensatory damages as a result of Corning's breach of the Supply Agreement together with interest and costs for damages for which an adequate remedy at law exists;

5.  For a judgment declaring that Corning has infringed one or more asserted claims of the DSM Patents;

6.  For a judgment awarding DSM compensatory damages as a result of Corning's infringement of the DSM Patents, together with interest and costs, consistent with lost profits and in no event less than a reasonable royalty;

7.  For a judgment declaring that Corning's infringement of the DSM Patents has been willful and deliberate;

8.  For a judgment awarding DSM treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Corning's willful and deliberate infringement of the DSM Patents;

9.  A judgment declaring that this case is exceptional and awarding DSM its expenses, costs, and attorneys fees in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d)of the Federal Rules of Civil Procedure;

10.     A grant of a permanent injunction pursuant to 35 U.S.C. § 283, enjoining the

Corning from further acts of infringement; and

11.     Such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: October 16, 2014                          Respectfully submitted,


By:  /s/ Joseph A. Mahoney
Joseph A. Mahoney
Vera A. Nackovic
Erick J. Palmer
Manisha Bhangare
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – fax

Sharon A. Israel (PHV Admission Pending)
Kyle E. Friesen (PHV Admission Pending)
Henry M. Griffin (PHV Admission Pending)
MAYER BROWN LLP
700 Louisiana Street
Suite 3400
Houston, Texas  77002
(713) 238-3000
(713) 238-4888 – fax

*Counsel for DSM Desotech, Inc. and DSM
IP Assets B.V.*